UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDGAR ELEAZAR LOPEZ MENDEZ,

                Petitioner,

v.

KEVIN RAYCRAFT et al.,

                Respondents.

_____/

Case No. 1:26-cv-497

Honorable Robert J. Jonker

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Pet., ECF No. 1).  For the following reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is a native and citizen of Guatemala.  (Pet., ECF No. 1, PageID.8; Notice to Appear (NTA), ECF No. 1-3, PageID.38).  Petitioner entered the United States in 2012 at an unknown location without inspection. (Pet., ECF No. 1, PageID.8; NTA, ECF No. 1-3, PageID.38).  On February 26, 2024, Petitioner was charged with reckless operation of a motor vehicle. (ECF No. 1-5, PageID.43).  On January 7, 2025, the Department of Homeland Security (DHS) issued Petitioner a Form I-862, NTA, charging Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) because Petitioner was an immigrant "present in the United States without being admitted or paroled, or who arrived in the

United States at any time or place other than as designated by the Attorney General." (NTA, ECF No. 1-3, PageID.38).   In April of 2025, Petitioner was arrested for domestic violence by the Cincinnati Police Department.    (Resp., ECF No. 5, PageID.61).    On May 9, 2025, U.S. Immigration and Customs Enforcement (ICE) placed Petitioner in immigration custody.  (*Id.* at PageID.61).

On July 15, 2025, the Cleveland Immigration Court considered Petitioner's request for a custody redetermination. (Order, ECF No. 1-7, PageID.48). The Immigration Judge concluded that, under 8 U.S.C. 1225(b)(2)(A) she did not have jurisdiction to grant bond. (*Id*.)  Alternatively, though, she also concluded that Petitioner would not be eligible for bond because he is a danger to the community, as evidenced by his two prior arrests—one for reckless driving and the other for domestic violence.  (*Id.*)

By order entered August 15, 2025, the Immigration Judge found Petitioner to be removable, denied Petitioner's request for cancellation of removal, and granted Petitioner's application for voluntary departure. (Order, ECF No. 1-9, PageID.51–54).  According to the order for voluntary departure, Petitioner had until October 14, 2025, to voluntarily depart.  (*Id.*)  Failure to do so would result in an automatic order of removal to Guatemala that would take effect immediately.  (*Id.*).  Petitioner did not depart by the date specified; instead, he appealed the Immigration Judge's order.[1]  (EOIR Automated Case Information, ECF No. 1-10, PageID.55). Petitioner remains in detention at the North Lake Processing Center.

---

[1] The scope of Petitioner's appeal has not been made clear to the Court.  The Court received a screenshot from the EOIR database showing an appeal pending, but neither party provided the actual appeal documents.  Thus, it is not clear whether Petitioner is appealing his voluntary departure order or his order of removal or both.  Such a distinction could affect the merits of future habeas petitions, but the Court does not need to determine the scope of Petitioner's appeal for this proceeding, so the Court is not ordering supplemental briefing.

In the § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 either ordering Respondents to release Petitioner or ordering Respondents to conduct a bond hearing to satisfy the requirements of due process.  (Pet., ECF No. 1, PageID.29–30).  In an order entered on February 13, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 4).  Respondents filed their response (ECF No. 5) on February 19, 2026, and Petitioner filed his reply (ECF No. 6) on February 23, 2026.

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  This includes challenges by non-citizens in immigration-related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001);  *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## DISCUSSION

The Court has reviewed immigration detainee petitions and granted habeas relief in hundreds of recent cases challenging Respondents' application of a Section 1225 mandatory detention regime to people like Petitioner here, who should be handled under the discretionary detention regime of Section 1226.  This is not such a proceeding.  To the contrary, an immigration judge has already applied the Section 1226 regime to Petitioner and concluded that Petitioner is not entitled to release on bond.  The question before the Court is whether that discretionary

decision violated Petitioner's Fifth Amendment due process rights. The Court concludes that it does not.

Through the INA, Congress has given the Executive broad grants of discretion. Section 1226(a), specifically, authorizes the Attorney General to detain a noncitizen during removal proceedings and to decide whether release on bond or conditional parole is appropriate. Section 1226(e) then restricts judicial review of such discretionary judgments, providing that courts may not "set aside" decisions regarding detention, release, or bond. *Id.* § 1226(e).

This does not mean that the Court may not review the constitutionality of the overall statutory scheme Congress has created. *Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review," and does not bar a "constitutional challenge to the legislation authorizing his detention without bail."). Nor does it mean that the Court may not consider whether, in certain cases, the combined effect of the Attorney General's discretionary decisions results in a violation of a petitioner's constitutional rights. *See Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018) (instructing the court of appeals to consider whether the petitioners' constitutional rights had been violated by prolonged detention under § 1226(a)). But it does reflect Congress's judgment that it is best to entrust the Executive with the responsibility of making the day-to-day determinations that structure the detention process and to insulate those determinations from judicial second-guessing. So long as the Executive's exercise of that discretion conforms to the statutory scheme and does not result in constitutional violations, the Court will not second guess Congress's decision to grant the Executive such discretion. Thus, it is the Court's role to verify that Petitioner obtains the procedural safeguards prescribed by Congress and by the Constitution, but it is not the Court's role to substitute its own judgment for that of Congress, the Immigration Judge, the BIA, or DHS.

4

Here, there is no question that Petitioner has received the protections granted by Congress because Petitioner already received the bond hearing to which he claims he is entitled.  At that bond hearing, an Immigration Judge reviewed Petitioner's history of arrests and concluded that he was a danger to the community.  Of course, the Immigration Judge also concluded that she lacked jurisdiction to grant bond, and this Court has repeatedly indicated that it disagrees with that conclusion.  But the fact that the Immigration Judge believed—erroneously, in this Court's opinion—that she lacked jurisdiction to grant bond does not negate her alternative holding, which was based on a review of Petitioner's prior encounters with law enforcement.  The conclusion that Petitioner is a danger to the community is exactly the type of discretionary decision that Congress has entrusted to the Executive and removed from judicial review.  Therefore, the question for this Court is not whether that discretionary decision is right or wrong; it is whether the Executive's exercise of discretion has resulted in violation of Petitioner's constitutional rights.

In deciding whether the Executive's exercise of discretion has resulted for Petitioner in a violation of the Constitution, the Court is guided by Supreme Court precedent demonstrating that one of the most important factors for courts to consider is the length of time the detention has lasted.  In *Zadvydas*, for example, the Court considered the constitutionality of detention under 8 U.S.C. § 1231(a)(6), which applies to detainees who are subject to a final order of removal.  533 U.S. 678, 682 (2001).  Although the statute permitted detention "beyond the removal period," the Court emphasized that, at a certain point after removal no longer seemed reasonably foreseeable, indefinite detention would become constitutionally problematic.  *Id.* at 699.  The Court declined to identify a fixed point in time at which further detention would be impermissible, but it designated six months as a "presumptively reasonable period" of time for the detention to last.  *Id.* at 701.

That same focus on the length of the detention can be seen in *Demore*, which considered whether mandatory pre-removal detention under § 1226(c) was constitutionally permissible. 538 U.S. 510, 531 (2003). The Court concluded that it was, but a central aspect of its reasoning was tied to the fact that such mandatory detentions tend, on average, to be quite short. *Id.* at 529–30. The record showed that most § 1226(c) detentions concluded within a few months, with the majority lasting less than the six-month period that the Court had recognized as presumptively reasonable in *Zadvydas*. *Id.* The Court expressly relied on this fact to conclude that the statute, as written, was constitutional. *Id.* at 531. And Justice Kennedy's concurrence suggested that the result might have been different if the government were responsible for "unreasonable delay" that caused the detention to extend significantly longer. *Id.* at 532 (Kennedy, J., concurring).

Drawing insight from these cases, a number of courts of appeals have recognized that the length of time the petitioner has been detained is one of the most important factors to consider when determining whether pre-removal detention is constitutional. *See, e.g.*, *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 212 (3d Cir. 2020) (granting relief after the petitioner had been detained for two-and-a-half years); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (granting relief after the petitioner had been detained for fifteen months); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) (granting relief after the petitioner had been detained for ten months); and *Black v. Decker*, 103 F.4th 133, 137–38 (2d Cir. 2024) (granting relief to two petitioners who had been detained for seven months and twenty-one months respectively). Other factors that may affect the decision include whether the detention is likely to continue, whether the reasons for the delay are due to actions taken by the petitioner or by the government, and "whether the alien's conditions of confinement are 'meaningfully different[]'

6

from criminal punishment." *Id.* (quoting *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)).

In this case, the duration and circumstances of Petitioner's detention do not yet create a constitutional problem.  Supreme Court precedent has made clear that detention during the pendency of removal proceedings is constitutionally permissible for at least some not-insignificant period of time.  *See Demore*, 538 U.S. at 531 (explaining that "detention during removal proceedings is a constitutionally permissible part of that process" and upholding confinement lasting several months).  Even the six-month period discussed in *Zadvydas* was not referred to as a hard limit on the length of time that an alien may be detained, but was rather offered as an example of a "presumptively reasonable" period of time, before which courts should not call into question the Executive's discretionary decision to keep an alien in detention.  533 U.S. at 701 ("This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.").  Moreover, *Zadvydas* dealt with detainees who were subject to final orders of removal, whereas the Petitioner in this case is still in the removal process and is thus still undergoing the specified processes to which he is due.[2]  *See Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (recognizing that detention during the removal process is "more akin to detention during the administrative review process, which was upheld in *Demore*" than it is to the indefinite detention that was at issue in *Zadvydas*).

Accordingly, at present, Petitioner's detention does not violate the Constitution.  Should circumstances materially change—whether because proceedings stall, delays accumulate, or the

---

[2] It is also relevant that Petitioner is in immigration detention now because he chose not to follow through with the voluntary departure he requested and received.  Had he followed through on the timely voluntary departure, he would not be in custody.

detention becomes unreasonably prolonged for some other reason—the petitioner remains free to file a new § 2241 petition asserting an as-applied challenge at that time.

### **Conclusion**

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:   April 6, 2026                                  /s/ Robert J. Jonker
                                                              Robert J. Jonker
                                                              United States District Judge